Osprey. Is what? Good morning, your honors. And may it please the court. My name is Whitney Woodward and along with my colleague Michael Meneghini represent the appellant in this case, Miles Musgraves. We appear before this court under a 7-11 license through the Bloom Legal Clinic at Northwestern Law. This court should reverse for three reasons. First, the government failed to meet its burden of proof on three of the counts. Second, the warrant lacks probable cause. And third, the government used statements against Musgraves that should have been suppressed because they were made pursuant to an oral proffer agreement. Although Musgraves asked this court to reverse, at a minimum, it should remand for resentencing. The district court, though, clearly erred in sentencing Musgraves as a career offender because it based that determination on unreliable information concerning a 2006 conviction. Reliance... Ms. Woodward. Ms. Woodward, hello. Hi, Your Honor. The district court stated that even if he was not considered a career offender, a sentence of 240 months was the appropriate sentence under the 3553A factors. So why wouldn't that render any error in the career offender designation harmless? Well, first, Your Honor, that was an advisory sentence. But more importantly, this resulted in a sevenfold increase to Musgraves' sentence under what would have been the guidelines recommendations. That is substantively unreasonable. And we see the district court's analysis in explaining why it's 140 months, even absent career offender, would have been appropriate. We see that the court considers factors that are already taken into account under the guidelines, including Musgraves' prior convictions and that sort of thing. And so therefore, regardless of whether career offender was applied or not, and here, of course, it was, that sentence that the judge gave was substantively unreasonable and should not have been applied. To appellant's first point, the sufficiency of the evidence challenges. The government failed to meet its burden of proof on the conspiracy, the handgun possession, and the distribution counts. For the conspiracy count, when this court upholds conspiracies, it tends to do so in instances involving large amounts of drugs, where there are multiple purchases on credit, and where the members have commonly aligned financial interests. Here, the government's case shows two brothers mainly, one buying small personal use size amounts of cocaine from the other, in quid pro quo transactions. This is not a conspiracy, your honors. At most, it establishes a buyer-seller relationship. That's a jury argument, of course. Are there any, was there an objection to the jury instructions defining buyer-seller? Your honor, I'm not certain if that's, I'm not certain on that. I don't see any argument in your brief against jury instruction. No, your honor. I do know that at trial, defense counsel did object to a number of jury instructions. I am not certain whether the conspiracy or buyer-seller language was one of those jury instructions that was objected to, but under this court's precedent guarding conspiracies, the five factors that this court relies upon for determining conspiracies do not weigh in the government's favor here. Yeah, but your problem is that we don't weigh things on appeal. We have to determine whether no reasonable person could find guilt. Normally, it's a lot easier to attack jury instruction than it is to contend there's insufficient evidence. That's correct, your honor. But jury is not allowed to lapse into speculation and here must apply the law. And if there's to be any distinction between a buyer-seller relationship and a conspiracy, this case shows why, where the difference should lie. And that is these repeated quote-unquote transactions. They're small amounts. They're between individuals who have a familial relationship. This all undercuts any sort of argument that there was a conspiracy. The felon in possession and the distribution counts also suffer from this fatal evidentiary flaw. The distribution count here is the poster child for speculation. The only shred of evidence connecting Musgraves to the cocaine found in Smith's car was Musgraves reporting of it to police pursuant to his proffer agreement with them. There was no physical evidence here tying Musgraves to the cocaine. There were no witnesses that put Musgraves in Smith's vehicle or around it. But what's more troubling here is that Smith was found in the car and he had additional cocaine in his pocket and the government inexplicably did not charge either Musgraves or Smith with possession or distribution of this cocaine. And this is at the same time that police had a warrant out for Smith's arrest for the same offense that Musgraves was charged with, which was distribution of a controlled substance. The gun possession similarly relies upon speculation. Here, the government's case builds upon stale evidence, which was evidence that Musgraves took possession of the weapon in early 2013. That, however, is actively undermined by a wealth of evidence in the government's own case. We know that Stephen said that Musgraves reported at the time of this transaction when he allegedly took possession of the weapon that he didn't deal with weapons and he wanted to get it out of his house. We also know that Alton Police did not uncover any guns during their July 12th search of Musgraves' home. It did turn up ammunition, though. There were no weapons and the ammunition that was recovered did not match the size of the handgun found months later in Smith's car. These two counts again rest on impermissible speculation. Wouldn't a jury be entitled to believe Smith that those items were not in his vehicle before that night? And given that, doesn't the circumstantial evidence point directly to Musgraves? Since the firearm was in his possession earlier that year and he knew the exact location of those items in the vehicle, even though at least the firearm, it's true, was not in plain sight to an outside observer. But why wouldn't that be sufficient to support the verdict? Well, Your Honor, for one, Musgraves was reporting this information pursuant to his proffer agreement. He was communicating with police to report wrongdoing, specifically drug and gun offenses. And therefore, it's not surprising that Musgraves would have reported this. But to Your Honor's question regarding Smith himself, Smith did not recall much of anything that morning. In fact, he didn't remember whether he crawled into the front seat or the back seat and therefore his failure to recall whether the handgun and the cocaine were his is immaterial to the analysis here. Smith is not credible. And while the jury is allowed to make and weigh the evidence here, the evidence did not eliminate Smith as the possessor of both the gun and the drugs. I thought some of the government's best evidence, in essence, on the gun count was Smith's certainty that there was a gun in the car after the police had gotten back to him and said there was no gun in the car. And he told him, look again. Yes, Musgraves did insist that police search the vehicle again after that initial search did not turn up a weapon. But we know from his text messages to Detective McRae and also from the 911 caller who reported this that both individuals reported that they had seen Smith with this weapon and the 911 caller said that it was under the seat. So here it's not surprising that Musgraves was insistent given his experience and personal encounters with Smith. I would like to briefly address the two remaining issues, the lack of probable cause. Here Alton Police failed to disclose to the issuing judge any information regarding the reliability and credibility of the individuals who provided information in the affidavits. Relevant here is the failure to disclose. How can you possibly avoid Leon? Right? Leon says there's no suppression if the search is conducted under a warrant unless any sane agent would know that the warrant is invalid and here after a full opportunity for an adversarial presentation, the United States District Judge says the warrant is valid. So how is any sane officer to know that the judge is wrong? Well, Your Honor, it wasn't a full opportunity for an adversarial hearing because Tom Tisdale's name was not disclosed to the issuing judge. He was simply presented as... You didn't listen to my question. There was a full opportunity for argument before a U.S. District Judge. U.S. District Judge said this warrant is valid. Right? So given that, how could it be that any reasonable officer would know that the warrant was invalid? Your Honor, under... Is that the Leon standard? Yes, Your Honor, but police are expected to abide by the law and under Bell and Glover, police have an obligation... That's just a disagreement with Leon. That and three dollars will get you a cup of coffee these days since we can't disagree with the Supreme Court. Your Honor... You might want to go on to your final argument. Thank you, Your Honor. With respect to the proffer agreement, appellant argues that District Court erred in failing to suppress those November 17th statements Musgraves made because they were in a fulfillment of this proffer agreement. But all accounts Musgraves entered into this cooperative agreement on July 12th, and we know... What part of the proffer agreement are you relying on particularly? Your Honor, we're relying upon the parties entering that proffer agreement July 12th. You must be relying on some particular language. It's not the idea of a proffer agreement. In the abstract, must be some language that you are relying on. Your brief doesn't cite any particular language, and that's why I'm asking this question. Your Honor, it was an oral proffer agreement and detect... It was reduced to writing your client's signs, every paragraph. I wish you'd answer my question. Your Honor, the parties entered into the oral agreement... Would you please answer my question? The written document was never signed by Musgraves. Let me tell you what my takeaway is. You're not relying on any language in the agreement. Is that the correct understanding? Not in the written agreement, Your Honor. Okay. Musgraves Defense Council testified that the terms of the agreement that the parties entered into July 12th was that we expect you to testify honestly. Nothing will be held against you. We want you to go work, do some work for us. And as long as you cooperate, all will be well. I see I've entered my rebuttal time, Your Honor. So if there are no further questions, I would like to reserve the remainder. Thank you. Good morning, Your Honors, and may it be... Good to see you again, Mr. Norwood. Good to see you. Mr. Norwood, we saw each other yesterday. And if you're on the panel tomorrow, I'll see you again. With respect, I know that you asked about a buyer-seller instruction. One was given, it's my understanding, and also it was the pattern instruction from the Seven Circuits 2012 edition, which is less complicated than the one before that. So I believe buyer-seller instruction was given, and obviously the jury, based on all the facts, determined that there was more than just a buyer-seller relation, that a conspiracy existed. With respect to the distribution and the gun counts, what I'll call the framing counts, I think evidence was sufficient for a jury to determine that the defendant was the one who put the... Mr. Norwood, excuse me. Yes, ma'am. Is the only evidence of fronting that you have the single incident in which Musgraves kept Stevens' gun as collateral because Stevens owed him money for cocaine? Because if he kept the gun as collateral, how is that an example of fronting? To me, it would actually evidence a lack of trust rather than a relationship of trust because the gun was retained as collateral. Your Honor, it was, and my understanding of the record, I was not trial attorney, but I've read the trial transcript, and it was my understanding that there was a portion where Stevens said he owed his brother a debt and provided the gun. So that was my understanding of the record. If I'm wrong, I apologize, but I thought there was one time where Stevens said he owed his brother a debt, which would be evidence of fronting. And with respect... But that was the one secured by the gun. There was, well, there were two guns, Your Honor. There was the rifle, and then there was the handgun. They were both provided, I believe, at the same time, according to the trial testimony. Okay, that sounds like a relationship between a pawn shop and its customer, not a trusting relationship between conspirators. Assuming that one of the firearms was used as collateral, the other was not. And the transcript indicates that with respect to the pistol, the defendant, or excuse me, Stevens contacted the defendant to see if he wanted that firearm, and then brought it over at Stevens' request, but he checked them beforehand. Do you want this pistol? And then traded that for the crack cocaine, or excuse me, the cocaine. So I think the rifle may have been used for collateral, but not the pistol. Okay, well, if the pistol is used as a substitute for cash, that's not further evidence of the conspiracy either, right? It's evidence of a relationship more than a buyer-seller relationship, and I say it this way. And I always think of a buyer-seller relationship, and I think Judge Posner used this analogy in a case. Walmart. If I go to Walmart every week and buy a loaf of bread, and Walmart sells me a loaf of bread for six months, we have a standardized way of doing business, but there's no agreement between us. But in this case, you have the defendant trying to protect the drug business by running off somebody who thinks he thinks is a buyer. You have trying to notify the defendant of who set up Stevens so that the defendant doesn't get caught. You have trading. I can't go to Walmart and trade a gun for dough. I have to, or excuse me, trade a gun for bread. I have to bring them money. There was one, let me get all the, I wrote down all the facts that support the conspiracy. I'd like to hear that list. Well, it's not very long, Your Honor. I'm not, I'm not. Your Honor, no, I'm not here to say that it's the world's largest conspiracy. The only question for the court is based on all the evidence, and the light was favorable to the government, could a reasonable juror have found that an agreement existed? And I think it was. There was. In arguing that the evidence established conspiracy and not merely a buyer-seller relationship in the brief, you point to evidence of an intent to warn of future threats. But the defendant has argued that those examples occurred outside the time period of the alleged conspiracy. So my question is this, what evidence do you have of such cooperation that was outside the time frame of the alleged conspiracy? Yes, Your Honor, I think the first time he warned him was in September 2012, which was outside the time frame. The second time, I'm, I'll have to look at the date when the conspiracy extended to, because I thought the defendant had just been arrested, and the conspiracy lasted through July 2013. Stevens was arrested, I believe, July 9, July 10, somewhere around that 2013. And it was after that is my understanding that while Stevens is in jail, or maybe even at minority prison, he is trying to contact Musgraves to let Musgraves know who was the informant who, or who set up Stevens to protect Musgraves from falling into the same trap. And to me, that's evidence of more than just a buyer-seller relationship, but of a conspiracy. Again, Your Honors, I'm not here to say that, again, this is the world's grandest conspiracy, but there is evidence from what the jury can make the inference. Can we hear your list? Oh, we have the transferring the guns. We have one time where drugs, he was paying back a debt. We have... Could you repeat that sentence? I believe there was one occasion where Stevens said he was repaying a debt, but show evidence of fronting. A fronting drug by repaying... Did he say he was repaying a debt for drugs? These guys are brothers. I do not know for certain, Your Honor. I'm not going to represent one way or the other. I do not for certain. Okay. Again, they're brothers. He always goes, he always brings the customers to the house, but it's always Stevens who goes in alone that shows a level of trust. Now, I find that a very odd reason indeed, Mr. Norwood. I mean, really, the practice of not bringing other parties into a house is not evidence of a conspiracy as opposed to a buy or sell relationship. That one is really, that one really bothers me. Your Honor, I'm trying to do everything I can with the evidence we have, and again... We're not taking it personally. No, no, I understand. I understand. I just think, again, I'm not saying this is the grandest conspiracy. There is enough evidence, and I've listed some. If Your Honor's disagree, obviously, that's your prerogative. With respect to the framing counts, clearly, the defendant is the only one who knew where the gun was and where the drug was drugged over the visor. He called 911 to report it. When the officers went to search the car, they could not find the gun anywhere. So nobody from the outside could look and see the gun. If you recall, the back seat, the front seat, driver's seat was backed up so far that there was only a few inches between that and the back seat. The officers could not see the gun. No person looking in the car could see the gun. The only way that the government, the evidence supports the finding that the only way that Musgraves knew that gun was underneath the seat is they put it there. That's the government's position. It's the exact same gun that he had provided to him by Stevens a month earlier. And I guess the ironic thing is, Musgraves didn't need to frame Stevens for anything, or excuse me, Jesse Smith for anything, because Smith already had drugs in his pocket. If Musgraves knew that Smith had drugs in his pocket, all he had to do was call the police and say, there's a guy outside my house with drugs in his pocket. He didn't do that. He planted drugs in the car and planted the gun and then called the police. I'm trying to make sure I cover everything. Let me ask you about that, if I could, because obviously the principal evidence against Mr. Musgraves on those charges is the tip, right? Yes, your honor. And informants are giving tips to the police all the time, right? Across Illinois and Indiana and Wisconsin. We hope they are. We hope. And if a tip by somebody who's motivated to try to work off a case or gain some kind of benefit is enough to infer that the informant planted the materials, we've got a problem. Well, it's not just a tip in this case, your honor. It's the very fact that Musgraves himself had that very gun with that same serial number earlier. Yes. Yeah. It's also a fact that Musgraves was trying to provide information to law enforcement to help himself out, but he was not doing it and was received a call from the detective saying, if you're not going to provide information, we're going to proceed with the charges we have against you. So he's an informant with an incentive to come up with a good tip, right? Yes, your honor. And he again, the evidence shows he put the gun in the car. I think there was something mentioned about the sentence previously, and it was called an advisory sentence. I don't think it was an advisory sentence. I think it was the actual sentence. We've encouraged judges to make those kinds of statements. Alternative, yes. Particularly where there are disputed guideline issues. Could I ask you, Mr. Norwood, one of the officers testified that no judge in his experience had ever asked about the criminal history of informants whose information was being used to obtain search warrants. Yes, your honor. I think that was an Alton police officer who said that the Madison County judges that he had presented search warrants who had never done that. I've got to say that that we don't have the authority to overrule or limit Leon, but I've got to say that that testimony was very troubling to me given how important the credibility of informants is in when they are providing the foundation for search warrants. If the judges aren't acting as if they care, well, your honor, then we start to worry about, for the magistrate, abandoning the neutral role. It may or may not amount to that, but it's very troubling. Well, I understand your concern, your honor. I think in this case there was ample probable cause in the credibility of the the informants. Well, there are two informants. One was Tisdale. That was on video, right? But there's a video by, so regardless of Tisdale's past, the officer said, I witnessed this transaction on video. With respect to the the boner affidavit that the young kid that came in, I think he was still a minor at the time or just around age 18. The officer, again, small towns, officers know who the troublemakers are. The officer hadn't run across this kid before. He brought the kid to the judge and I guess, you know, maybe the officer could have said, judge, do you have any, you know, you haven't asked questions. Would you want to ask him, this judge? But I mean, I'm not sure what else the officer can do when he presents the judge and the judge, state judge chooses not to ask any questions at that point. The officer's done everything that he can do. I'm trying to think if I've covered everything. Do your honors have any questions about anything that I've missed? I think that you've covered everything I have. Judge Ropner, do you have any questions? Well, yeah, because you stated in the brief that the Illinois conviction may have been improperly recorded as a class X felony, but actually have been reduced to a class 2 felony. But Musgraves argued that the actual charge may have been reduced to a class 1 or class 4 possession charge and that a mere possession charge would not be a predicate offense under the career offender guideline. And my question to you is, how can we speculate as to what the actual offense was when all we know is that the sentence actually imposed was not a lawful sentence for the offense of conviction? I was troubled by that. Your honor, I understand your concern. All the documents we have from the state court indicate that the conviction was possession with intent to deliver, which is a predicate offense. That's what all the documents indicate. The defendant speculates, well, maybe he was convicted of possession, but there are no documents to indicate that. And when this court is making a decision, it's my understanding from the law that the court looks at the documents and the documents only to determine whether or not an offense is a predicate. And when I don't know exactly what happened in state court, your honor, I wasn't there obviously. But when you look at the timing of these two, the initial charge was brought. Twenty five months later, the plea occurs. The defendant then pleads guilty, is sentenced basically to time served and sent off to IDOC to serve some other time he owes. I'm guessing the Madison County wanted to save money and ship them off to IDC and let IDOC house the person. But all the documents we have from the court that are certified by the court indicate conviction is unlawful possession with intent to distribute. And your and your honors, I submit that's what that's what the conviction was. And that's what the evidence shows the conviction was. And I do have another question in it in a different thing. And it's this in the affidavit to procure the warrant Brantley characterized the purchase by the confidential informant as a controlled by in which all the precautions were taken to ensure that the process was not tainted such as searching the informant in his vehicle before and after the purchase, retaining surveillance of the informant throughout the process. But the affidavit failed to mention that these controls were shattered because the informant's vehicle ran out of gas and he was driven by another person to a gas station where he purchased gas before returning to the police station that information. It seems to me rendered the control by a sham and why isn't that type of deceptive and false representation something that absolutely should require a Frank's hearing your honor. I see my time is up. You mind if I answer your question? Obviously not. So grateful. Okay, your honor. I see the affidavit when the officers say they took every precaution they could. I think that is accurate that they did search the car and the defendant and the car or excuse me, the seat confidential form in the car before the transaction afterwards. They did not think he would run out of gas. I understand that but the again the video captured the transaction. So there's no dispute that the transaction occurred. There's no dispute that that occurred and the government believes that the officers that doesn't warrant it does just as guess doesn't warrant a Frank's hearing that the officer input that the car after the transaction the defendant ran out of gas and somebody took him to a gas station and brought him back. So they could put gas in his car. Thank you. Your honors. Thank you. Mr. Norwood. Mr. Maneghini. May please the court. But Benigni continuing on behalf of appellant miles Musgrave the honors. I just have three brief points on rebuttal. But first I'd like to clear up one factual issue. Judge Hamilton picking up on your question regarding to the quid pro quo transaction of the gun exchange. Turn this court's attention to trial transcript volume 2 pages 85 87 is clear as a single exchange of only the handgun. The Romel Stevens never traded the AK 47 miles Musgraves. And additionally Stevens did not testify that he owed a debt and that that was the reason for the transfer of gun. So this was not a fronting and at best even if this could be construed as a credit transaction a single instance of fronting is not sufficient to support conspiracy charge. Second your honors the conspiracy charge is a high possible issue on appeal as we are challenging the insufficiency of the evidence not their instruction buyer seller instruction was given. Otherwise a conspiracy charge would never be appealable as long as that instruction is skipped. Second your honors with respect to the framing issue the government points to the tip the knowledge of the location of the drugs and the gun. However, if knowledge equals possession then the reach of this is limitless and that any confidential informant could be charged with possession of any tip. Additionally with respect to the location of the gun that it was towards the back seat hidden the government's own witness testified that during the towing process the gun likely slid back and that is one reason why it was in that back unavailable from the front seat. Second search was after it was towed. Yes, the second search was when it was at already impounded at the lot when they went back gun was slid back towards the back of the front seat. Additionally, the government says that Musgraves the last known individual with a gun. However, that was 10 months earlier. So the government ignores temporal gap in Musgraves so-called session of the gun and the framing and also the intervening search in July where the gun was not discovered at Musgraves house. Similar to this point government says that Musgraves issued a so-called ultimatum and then at that point he gave this tip on the November 17th statements. However, that ultimatum was given six weeks prior at the end of September and ignores in between that so-called ultimatum and the November 17th statements. Musgraves provided other occasions of tip where guns were located on the streets very similar to this tip on November 17th. And third, your honors quickly turn to the probable cause. Although Boner was present as your honors mentioned, he didn't know, didn't have any reason to ask any questions because Brantley provided no information at all with respect to credibility or reliability, giving the issuing judge no reason to ask any further questions and undermining that attached and neutral role that issuing judge is supposed to serve. In respect to criminal history, Boner was a juvenile and so they did not even check the juvenile record. So that argument is also unavailing. And very quickly your honors, I'd just like to touch on sentencing. If I could just ask you, but if we agree with you on, let's say the sufficiency of the evidence issues, that goes to counts two, four and five as I understand it. Yes. So the appropriate step if we were to agree with you would be a remand for sentencing on one and three. Those, there's nothing that affects those counts, isn't there? I just wanted three, your honor. Correct. No, but a sentencing would, remand for sentencing would be warranted. Okay. And with respect to sentencing, I see my time, but just very quickly, the government says one of two things happened. However, that second option artificially limits the possibilities of what this charging document could be. It's not certain. The district court, sentencing judge and the government below both acknowledge that it's not clear and it's not certain what this charge was. However, saying that one of two things happened, artificially excludes an entire class of mere possession charges in section 402 of the Illinois code, such as a class four felony that carries a one to three year sentence. Thank you, your honors. Thank you, Mr. Maneghini. And the court thanks the Bloom Legal Clinic for its willingness to accept the appointment in this case and the assistance it must brave and to the court. Thank you.